# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KANSAS ASPHALT, INC.,                          )
                                               )
      **Plaintiff,**                        )
v.                                             )     **CIVIL ACTION**
                                               )     **No. 13-2325-KHV**
BRE DDR MERRIAM TOWN CENTER, LLC, )
DDR MDT SHOPPERS WORLD, LLC,                   )
WELLS FARGO BANK, N.A. and                     )
CITIBANK, N.A.,                                )
                                               )
      **Defendants.**                       )
_____)
                                               )
BRE DDR MERRIAM TOWN CENTER, LLC, )
and DDR MDT SHOPPERS WORLD, LLC,               )
                                               )
     **Third-Party Plaintiffs,**           )
v.                                             )
                                               )
CONTROL BUILDING SERVICES, INC.,               )
CONTROL EQUITY GROUP, INC.,                    )
EDWARD TUREN and NEAL TUREN,                   )
                                               )
     **Third-Party Defendants.**           )
_____)

## MEMORANDUM AND ORDER

This case comes before the Court on <u>Plaintiff Kansas Asphalt, Inc.'s Motion To Remand, Or, In The Alternative, Plaintiff's Motion To Sever Plaintiff's Claims And Remand To District Court Of Johnson County, Kansas</u> (Doc. #5) and <u>Third-Party Plaintiffs BRE DDR Merriam Town Center, LLC and DDR MDT Shoppers World, LLC Motion To Remand And/Or Abstain</u> (Doc. #7) both filed July 11, 2013. Also before the Court are <u>Defendants Control Building Services, Inc. and Control Equity Group, Inc.'s Motion To Transfer [To The United States District Court For The District Of New Jersey]</u> (Doc. #13) filed August 1, 2013 and <u>Third-Party Defendant Neal Turen's Motion To Dismiss For Lack Of Jurisdiction And Service Of Process</u> (Doc. #26) filed September

20, 2013. For reasons set forth below, the Court finds that the case should be remanded to the District Court of Johnson County, Kansas.

## Background

On April 9, 2013, Kansas Asphalt filed suit in state court against BRE DDR Merriam Town Center, LLC ("BRE") and DDR MDT Shoppers World, LLC ("MDT") (collectively, "DDR"). Kansas Asphalt alleged breach of contract and related state law claims and sought to enforce a mechanic's lien arising from defendants' alleged failure to pay for labor, services and materials which Kansas Asphalt had provided under contract.

On May 31, 2013, defendants filed an answer and third-party complaint against Control Building Services, Inc. ("CBS"), Control Equity Group, Inc. ("CEG"), Edward Turen and Neal Turen. CEG is a Delaware corporation with its principal place of business in Secaucus, New Jersey. CEG is the corporate parent of several affiliated companies, including CBS and Oxford Building Services, Inc. ("Oxford"). Oxford is not a party to this action.

The third-party complaint alleges as follows:

Edward Turen, a New Jersey resident, is chairman, CEO and principal shareholder of CEG and CBS, and CEO and a principal shareholder of Oxford. Neal Turen, a New Jersey resident, is Executive Vice President of CEG and CBS, and CEO and a principal shareholder of Oxford.

DDR alleges that it entered into an agreement with Oxford to coordinate contracting, oversight and payment of vendors to perform facility maintenance work at DDR properties. Under the agreement, vendors who performed services at DDR properties provided invoices to Oxford, which then invoiced DDR. DDR alleges that at some point, CEG and its affiliates, at the direction of the Turens, took out a revolving credit facility, using as collateral bank accounts. One such

-2-

account was one in which DDR placed funds for Oxford to pay vendors. Pursuant to the revolving credit account, the lender took a security interest in all of the borrowing entities' assets. Under this arrangement, Oxford's operating accounts were maintained as zero-balance accounts, which CEG swept on a daily basis to service the revolving credit facility. Thus, without DDR's knowledge, CEG and its affiliates used monies paid to Oxford to service their own debt obligations instead of paying DDR services providers, including plaintiff. CEG and its affiliates eventually lost their borrowing base and could no longer service their debt. Oxford stopped paying invoices for work provided at DDR properties. At the Turens' direction, however, Oxford continued to issue DDR invoices to obtain funds from DDR, knowing that the funds would not be used to pay DDR vendors but would be swept by CEG to service debt. As a result, approximately $11.1 million of Oxford invoices went unpaid, and vendors such as Kansas Asphalt sought recourse from DDR.

On February 26, 2013, Oxford filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey.

As noted, on April 9, 2013, Kansas Asphalt filed suit against the DDR entities in Kansas state court. DDR then filed third-party state law claims – for breach of the guaranty agreement against CBS; for civil conspiracy and tortious interference[1] against CEG, CBS, Edward Turen and Neal Turen; and for conversion and fraud against CEG, Edward Turen and Neal Turen.

On July 5, 2013, CBS and CEG filed a Notice Of Removal.[2] Under 28 U.S.C. §§ 1334, 1441 and 1452, they assert that the case may be removed because it is related to the Chapter 11

---

[1]     DDR asserts that CBS tortiously interfered with DDR's contractual relationship with Kansas Asphalt.

[2]     Third-party defendants Edward Turen and Neal Turen did not join in the notice of removal. See Doc. #1.

-3-

bankruptcy proceeding of Oxford which is currently pending in the Bankruptcy Court in New Jersey, Case No. 13-13821-MS.

## Legal Standards

Section 1452, under which third-party defendants CBS and CEG removed this action from state court, permits removal of any claim or cause of action to the federal district court if such court has jurisdiction over the suit pursuant to Section 1334. See 28 U.S.C. § 1452(a). Section 1334(a) gives district courts jurisdiction over "all cases under title 11 [of the Bankruptcy Code]," and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. § 1334(a), (b).

Kansas Asphalt asks the Court to remand, arguing that bankruptcy removal statutes do not apply because this action is not sufficiently related to a federal bankruptcy proceeding, and that this Court therefore lacks subject matter jurisdiction under Section 1334(a) and (b) and Section 1452(a). Plaintiff also seeks remand under the mandatory abstention doctrine, see Section 1334(c)(2), because the original complaint did not qualify for diversity or federal question jurisdiction. Finally, Kansas Asphalt also seeks remand under the discretionary abstention provision of Section 1452(b), which allows a court to remand a removed case "on any equitable ground."

Third-party defendants Control Building Services, Inc. and Control Equity Group seek transfer to the New Jersey bankruptcy court pursuant to 28 U.S.C. §1412, which permits a district court to transfer "a case or proceeding under title 11" to another district "in the interest of justice or for the convenience of the parties."

Third-party defendant Neal Turen seeks dismissal for lack of personal jurisdiction and failure of service of process.

-4-

## Analysis

To determine whether it has jurisdiction to consider the parties' various requests, the Court must first consider the propriety of the removal. As noted above, Section 1452(a) allows removal of any claim or cause of action over which this Court has jurisdiction. Section 1334(b) gives district courts jurisdiction to hear cases "arising in or related to cases under title 11."

District courts have jurisdiction over, and can refer to bankruptcy courts, the following types of proceedings: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11. 28 U.S.C. § 1334(a), (b); 28 U.S.C. § 157(a). See Orman v. Hollywood Motion Picture & Television Museum, No. 09-2333, 2009 WL 2914054, at *1 (D. Kan. Sept. 8, 2009). Categories (1), (2) and (3) are "core proceedings." Personette v. Kennedy, 204 B.R. 764, 774 (10th Cir. 1997). "Cases under title 11" are the bankruptcy cases themselves. Id. at 770 n.6. A proceeding "arises under" the Bankruptcy Code if it asserts a cause of action created by the Code. Id. And "arising in" proceedings are defined as follows:

> Proceedings "arising in" a bankruptcy case are those that could not exist outside of a bankruptcy case, but that are not causes of action created by the Bankruptcy Code. For example, orders respecting the obtaining of credit, confirmation of a plan, the assumption or rejection of a contract are all matters which could not exist absent the filing of a bankruptcy case, but are not causes of action created by the Bankruptcy Code.

Id. (citations omitted). None of these categories apply to the case before the Court. Plaintiff raises a breach of contract claim and other state law claims which are not created by the Bankruptcy Code or dependent upon the bankruptcy proceeding.

Under category (4), a proceeding is "related to" a case under title 11 if it could have been commenced in federal or state court independently of the bankruptcy case, but the "outcome of that

proceeding could conceivably have an effect on the estate being administered in bankruptcy."

Gardner v. United States, 913 F.2d 1515, 1518 (10th Cir. 1990); see Matter of Lemco Gypsum, Inc.,

910 F.2d 784, 788 (11th Cir. 1990) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.

1984)) (action related to bankruptcy if outcome could alter debtor's rights, liabilities, options or

freedom of action and which in any way impacts handling and administration of bankrupt estate).

Third-party defendants argue that the third-party complaint relates to Oxford's bankruptcy, as

follows:

> DDR's allegations make clear that Oxford is a key player in this case although it is not named as a party in the Third-Party Petition. DDR alleges that Oxford was a "conduit through which the DDR entities would pay for the vendor services" (i.e. vendors like Kansas Asphalt). DDR contends that Oxford, by and through the Third-Party Defendants, misappropriated approximately $11.1 million in funds that DDR Corp. affiliates (including the DDR entities) deposited in Oxford's operating account. The total amount (approximately $11.1 million) allegedly misappropriated by Oxford in this action is the same amount as the total claim (approximately $11.1 million) asserted by DDR Corp. against the Oxford Bankruptcy estate. As a result of Oxford's alleged nonpayment of vendor invoices, the vendors (including Kansas Asphalt) have begun seeking recourse against DDR Corp's affiliates (like Third-Party Plaintiffs DDR). In turn, the DDR Corp. affiliates have filed parallel actions across the country seeking to recover from Third-Party Defendants. A portion of DDR Corp.'s claim against the Oxford Bankruptcy estate represents the amount that Plaintiff Kansas Asphalt seeks to recover against DDR in the original petition and for which DDR seeks to recover against the Third-Party Defendants. If CBS/CEG do not prevail in this action they would have a claim for indemnification against the Oxford Bankruptcy estate, thereby altering the Oxford Bankruptcy debtors' rights and liabilities. If DDR recovers against CBS/CEG on either the Guaranty executed by CBS or against CBS/CEG for causing the alleged breaches by Oxford, two things may happen. First, to the extent that DDR recovers against CBS/CEG, the $11.1 million claim of DDR Corp. against Oxford will be reduced proportionately. A potential reduction of DDR Corp.'s claim against the bankruptcy estate is certainly a "conceivable" effect sufficient to show "related to" jurisdiction. Second, as a result of any such recovery by DDR against CBS/CEG, CBS/CEG's contingent claims against Oxford for subrogation, indemnity, and/or contribution will ripen. Oxford will be subject to additional claims from non-debtor third parties as a result of the outcome of this dispute, thereby affecting the estate both in terms of value and its administration. This action is thus conceivably "related to" the Oxford Bankruptcy, according to 28 U.S.C. § 1334(b).

Doc. #12 at 6-8 (internal citations omitted).

At least four other federal district courts, in parallel cases involving the same defendants and third-party defendants and the same service agreement, have rejected arguments that simply because there may be some "hypothetical effect on the Oxford bankruptcy in the future," there is related-to jurisdiction over similar state-law claims. T & K Asphalt Servs., Inc. v. DDRC Gateway, LLC, No. 13-11599-JLT, 2013 WL 5550512, at *3 (D. Mass. Oct. 8, 2013); see Driveway Maint., Inc., v. DDRM Bardmoor Shopping Ctr., LLC, No. 8:13-cv-1752-T-24 TGW, 2013 WL 5673509, at *3 (M.D. Fla. Oct. 17, 2013); Driveway Maint., Inc., v. DDR Southeast Clearwater Dev., LLC, No. 8:13-cv-1751-T-333 TGW, 2013 WL 5408242, at *7 (M.D. Fla. Sept. 25, 2013); Joseph McCormick Constr. Inc. v. DDR Corp., No. 13-cv-231E, 2013 WL 4811193, at *2 (W.D. Penn. Sept. 9, 2013); Ace Asphalt of Ariz., Inc. v. DDR Corp., No. 13-1163-PHX-MHB (D. Ariz. Aug. 28, 2013). Further, these courts have applied the same "conceivable effects" test which the Tenth Circuit applies.[3] This Court adopts the reasoning of these courts and finds that it does not have related-to jurisdiction in this case. The only basis to find related-to jurisdiction is the possibility that third-party defendants may have claims for indemnity against Oxford. Oxford itself is not a party to this action and the only claims in this case arise under state law. Further, it is unclear that third-party defendants will have valid indemnity claims against Oxford: defendants' claims against third-party defendants are based on their personal wrongdoings.

---

[3]    CBS and CEG rely on an oral ruling to the contrary in a parallel case from the Western District of Michigan in which a court overruled a motion to remand. See Tri-US Servs., Inc. v. DDR Corp., No. 1:13-cv-695 (W.D. Mich. Oct 21, 2013). See Doc. #31-1. In that case, the court found that Oxford is "a central player in the drama." The court then transferred the third-party claims to the United States District Court for the District of New Jersey, and remanded plaintiff's claims to state court. The oral ruling contains minimal citation to statutory or case law authority, and the Court declines to adopt its reasoning.

The Court concludes that third-party defendants have failed to meet their burden to show that this action is "related to" the Oxford bankruptcy. Removal was therefore improper because the Court lacks subject matter jurisdiction over this action.

**IT IS THEREFORE ORDERED** that Plaintiff Kansas Asphalt, Inc.'s Motion To Remand, Or, In The Alternative, Plaintiff's Motion To Sever Plaintiff's Claims And Remand To District Court Of Johnson County, Kansas (Doc. #5) and Third-Party Plaintiffs BRE DDR Merriam Town Center, LLC and DDR MDT Shoppers World, LLC Motion To Remand And/Or Abstain (Doc. #7) both filed July 11, 2013, be and hereby are **SUSTAINED in part** in that the Court **REMANDS** the case to the District Court of Johnson County, Kansas.

**IT IS FURTHER ORDERED** that Defendants Control Building Services, Inc. and Control Equity Group, Inc.'s Motion To Transfer [To The United States District Court For The District Of New Jersey] (Doc. #13) filed August 1, 2013 and Third-Party Defendant Neal Turen's Motion To Dismiss For Lack Of Jurisdiction And Service Of Process (Doc. #26) filed September 20, 2013 be and hereby are **OVERRULED** as moot.

Dated this 13th day of February, 2014 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge